MONCURE, P.
Richard G. Morri'*, a wealthy gentleman late of the city of Richmond, died in that city in May, 1867; leaving a wife and four children, and a large number of grandchildren surviving him; and leaving a will and two codicils, which, after his death, to-wit: on the 31st day of May, 1867, were proved and ordered to be recorded in the circuit court of said city; the will bearing date on the 12th day of December, 1866; the first codicil on the 5th day of January, 1867; and the second codicil on the 12th day of May, 1867. By the 1st clause of his will, he gave to his wife, besides all his plate, “an annuity during her life of two thousand dollars, to be paid her by half yearly instalments of one thousand dollars each, in gold, or in its equivalent at the time of such payment,” &c. The 2d clause of-the will is in these words;
“2. I give to my wife, during her life, my 'lots in the city of Richmond aforesaid, on Franklin street, Adams street and Main street, containing in all one acre of ground or thereabouts, whereon I now reside, and all the buildings and improvements thereon, together with all the household and kitchen furniture and cows on the said lots or used with them. All which property, real and personal, in this clause mentioned, I moreover put under the power and control of my said wife, to give absolutely in such other manner as she shall think fit, from time to time while she lives, by deed or other instrument or mode appropriate in law for giving the particular kind of property she shall so give, or after *her decease by her last will and testament, to such one or more of my descendants, and in such parcels or portions as she shall think proper, save and except that not more than one-half of the ground in the lots aforesaid, shall be given by her to any one of my descendants, and whatever parcel or parcels, portion or portions of the said property she shall, in any of the said ways, dispose of, the same shall not be taken into.account or estimate, as an advancement out of my estate, in any division hereinafter directed to be made. Whatever of the said property, real and personal, in this clause mentioned, shall not have been so disposed of by her. the same at her decease, shall be divided equally between and among all my children then living and the descendants of them who may be dead; the descendants, of any predeceased child to take among them per stirpes, the share to which such predeceased child would, if living, have been entitled, and if any of my children shall have died leaving no lawful issue then living, all of the said property not so disposed of, shall be divided among my then surviving children and the then living descendants *378 (taking in manner aforesaid) of such as may be dead.”
In the remaining clauses of the will the testator disposed of the remainder of his estate showing that he had made advancements to his four children respectively, amounting to upwards of thirty thousand dollars to each of them.
In the first codicil to the will, no notice is taken of the bequest contained in the 2nd clause of the will.
In the second codicil thereto, is the following provision affecting that bequest, viz:
“I.- Considering that it may promote the comfort of my beloved wife to reside elsewhere than in the city of Richmond, I hereby authorize a sale to be made with the consent and concurrence of herself and my *sons, Charles Y. Morriss and Robert G. Morriss, or the survivor of them,
if either shall have departed this life before sale is made, of my lots in the city of Richmond aforesaid, on Franklin street, Adams street and Main street, containing, in all, one acre of ground or thereabouts, whereon I now reside, and all the buildings and improvements thereon, and all the personal property which therewith I have in my last will and testament given to my said wife during her life, with power to dispose of the same in her lifetime or after her death, as in and by the said last will and testament is ■fully and at large expressed; and in case such sale be made, I direct that all the proceeds thence arising shall be invested as follows, to wit: the proceeds arising from the sale of the real estate shall be invested in the purchase of other real estate in the State of Virginia or elsewhere, as my said wife with the concurrence of my said sons, or of one of them in case of death or disagreement, shall determine, and the proceeds arising from the sale of the personal estate shall be invested in the purchase of other household and kitchen furniture and appliances for housekeeping as my said wife, with the like concurrence, shall determine.
“The whole of which, both real and personal estate, so newly acquired, shall be held to the same uses, intents and purposes, and subject to the like interests and power in my wife as is by my said last- and testament given her, in regard to the real and personal estate hereby permitted to be sold during her life, but subject it to the following qualification, that is to say, that whatever she shall, by will, deed or otherwise, give beneficially to any of my descendants, the same shall be not given absolutely to such descendant or descendants, so as to be under his or her control, but *given in trust for him or her, and in case of a female to her sole and separate use.”
Elizabeth Anne Morriss, widow of the said Richard G. Morriss, afterwards died in said city, where she resided at the time of her death, leaving a will which was duly proved and recorded in the chancery court of the said city on the 8th day of October, 1872. The 4th, 5th, 6th, 7th and 8th clauses of the said will relate (and are the only portion thereof relating) to the said lots of ground on Franklin. Adams and Main streets, containing in all one acre of ground or there-~h~.,ts, mentioned .in the will of the said Richard G. Morriss as aforesaid, and are as follows:
“4. My beloved husband, the late Richard G. Morriss. having in his last will and testament, which was duly proved and admitted to probate on the 2d day of May, 1867, in the circuit court of the city of Richmond, given me the power, subject to certain conditions in said will, which are therein more particularly set forth, to dispose, either by deed or will, of the lots in the city of Richmond, on Franklin street, Adams street and Main street, containing in all one acre of ground or thereabouts, with all the buildings, and improvements thereon (whereon I now reside), I do hereby make the following disposition of the same, by virtue of the power and authority given to me by the said last will and testament of my late husband.
“5th. As the real estate mentioned and described in the 4th clause is not susceptible of judicious division among my grandchildren, I desire that it shall be kept together for six years from the date of my death, unless my executor shall deem an earlier sale judicious; and it shall during that time, or until it is sold, be under my executor’s full control and management, and he shall dispose of the rents and profits of the same as I have heretofore directed.
*“6th. I hereby direct at the expiration of six years from the time of my death, or at such earlier period as my executor may deem most judicious, he shall proceed to sell, all of the real estate metioned in the 4th section of this will, for the benefit of those of my grandchildren whom I shall hereafter name, and in making said sale, my executor is hereby authorized and fully empowered to sell of my said real estate, upon such terms, as to the time and cash payments for the same, as he may deem most judicious and advisable. Before making sale of said real estate, my executor shall cause a survey to be made of all the same, and also cause its. division to be made into two equal portions as to quantity, but not as to value. The division line of said property shall commence on Adams street in the cen-tre of said real estate, and shall run in a direct line entirely through said real estate, from Adams street to the line of Joseph R. Anderson’s lot, leaving the same depth' of land on either side of said line; and in said division of said real estate into two equal parts as to quantity, one-half of said real estate shall front on Franklin street, and the other half shall front on Main street; and the buildings and other improvements on each half of said real estate shall be sold with and regarded as a part and portion thereof. My executor shall sell the portion of land which shall front on Franklin street, with all the buildings and improvements thereon, for the sole and exclusive use and benefit and advantage of my grandson Garland Morriss, son of Charles Y. Morriss and Pauline B. Morriss, and of my grandson Charles Y. Morriss, the son of Robert F. *379 Morriss and of Emma Morriss, and of my granddaughter Betty Hammond, the child of Edward L. Hammond and of Marcella C. Hammond, and of my grandson Morriss Gregory Barrett, a son of W. N. Barrett and Anne Elizabeth Barrett. When my executor *shall sell the portion of real estate as aforesaid, for the benefit of my four grandchildren as aforesaid, he shall, after deducting from the gross amount of said sale, a sum sufficient to meet all the expenses attending said sale, proceed to divide the total net amount of said sale into four equal sums, which are to be divided, share and share alike, among my four grand- | children,” (naming them,) “as aforesaid.” “My executor is further directed to invest ¡ judiciously, for each of my four grandchildren as aforesaid, his or her portions as aforesaid, during his or her minority, and also all interest which may accrue from said investments, until they shall each, respectively, reach the age of 21 years, when my executor shall pay, or cause to be paid, to each of my four grandchildren as aforesaid, their distributable share of said real estate, with such interest thereon as has accrued ! from their investments. Should, however, ! the necessities of either of my four grand- j children as aforesaid, in the opinion of my executor, render the expenditure of either the principal or interest of their said distributive share necessary for their proper maintenance and education, he is hereby authorized to make such expenditure as he may deem advisable for the purposes aforesaid. Should my grandchild Garland Mor-riss die before attaining the age of 21 years,
I direct that his portion as aforesaid, of the money arising from the sale of real estate as aforesaid, shall be equally divided among ] the other children of Charles Y. Morriss and Pauline B. Morriss who were born at the time of the execution of this will and who may be alive at the time of the death of my said grandchild, Garland Morriss.
“Tn the event of the death of my grandchild, Charles Y. Morriss, son of Robert F. Morriss, or of Betty Hammond, daughter of Marcella C. Hammond, or of Morriss Gregory Barrett, or of either of them, before *attaining the age of 21 years, then the portion or portions aforesaid, which they or each of them were to have received, shall be equally divided among those of my grandchildren whose names appear in the second clause of this will and who shall be living at the time of the death or deaths of either of my three grandchildren as aforesaid.
“7th. Having in the 6th clause of 1his will, by virtue of the authority and power vested in me by my last will and testament of my late husband, devised one-half of the real estate which is described in the 4th section or clause of my will, with the buildings and improvements thereon, to four of my grandchildren as aforementioned, and directed its sale for their exclusive, sole use. benefit and advantage, I hereby give that half of aforesaid real estate, which, in the division I have directed, shall front on Main street, to the following grandchildren, Richard G. Morriss, Mary Anderson Morriss. Walter Clarance Morriss, Charles Yancey' Morriss, Willie Marion Morriss, Virginia Eee Morriss, Elizabeth Yancey Morriss, Julia Cornelia Morriss and Eaurance Burr Morriss, the children of my son Charles Yancey Morriss and of his wife Pauline B. Morriss, and to Chapman Wilson Morriss. a child of my son, Robert P. Morriss and of his wife Emma Morriss, and to Betty Yancey Barrett, Marcella C. Barrett, Herndon Barrett, Julia Cornelia Barrett, Pomeroy Barrett, cliildren of my daughter Anne Elizabeth Barrett, the wife of W. N. Barrett, and to a female child of said Anne E. Barrett and W. N. Barrett, now about two years old, who has not been named, but is called ‘baby’. I direct that the half of said real estate as aforementioned, which, upon the division of the whole real estate upon which I now reside into two equal portions as to quantity, shall constitute that half or portion which fronts on Main street, shall, at *the expiration of six years from my death, or sooner if an earlier sale is deemed advisable by my executor, be sold by my executor for the sole use, benefit and advantage of my grandchildren as above named upon such terms, as to the cash and time payments for the same, as my executor may deem best.
“My executor, after deducting from the gross amount of the proceeds of such sale, a sum sufficient to meet all the expenses attending said sale, shall divide the total net amounts of said sale into sixteen equal sums or amounts, which are to be divided (share and share alike) among my sixteen grandchildren as before mentioned, each taking one-sixteenth part of the total of net proceeds of said sale.
“My executor is further directed to invest judiciously for each of my grandchildren as aforementioned, his or her share or portion as aforesaid, and also all the interest which may accrue from said investment, until they shall each respectively attain the age of twenty-one years, when my executor shall pay to each of my sixteen grandchildren as aforesaid, their distributable shares of said sale of real estate, with such interest thereon as may have accrued from said investment during their respective minorities. Should, however, in the opinion of my executor, the necessities of any one or more of my aforementioned grandchildren render either the principal or interest of their said distributable shares essential for their proper maintenance and education, my executor is hereby directed in such case, to make such expenditure of either the principal or interest of the shares as aforesaid, as he may deem judicious for the proper maintenance and education of any one or more of my grandchildren as aforementioned.
“Should any one or more of mv grandchildren as aforementioned, die before attaining the age of twentv-one *years, I direct in that event, that the distributable share or shares of such decedent or decedents, shall be equally divided among *380 those of my grandchildren who are named in this, the seventh clause of my will, who may be living at the time of such death or deaths.
“8th. In disposing by this my last will and testament of the real and personal property of which my beloved husband in his last will gave me the absolute testamentary control, I have given it to my grandchildren as my dear children have been provided for in the will of my husband.
“9th. I appoint my son Charles Y. Morriss executor,” &c.
The suit in which the decree appealed from in this case was rendered, was brought in. the chancery court of the city of Richmond, on the 20th day of November, 1876. by some of the parties against the other par-' ties interested in the provisions hereinbefore recited from the'wills of Richard G. Morriss and his wife Elizabeth A. Morriss, for the purpose of having the validity, construction, and effect of the said provisions ascertained and settled by the court, and the rights of the parties, respectively, in regard to the same adjudicated by the court.
The will of the testator Richard G. Mor-riss, and the will of his wife, the testatrix, Elizabeth A. Morriss, the construction and effect of which, on a particular subject, are involved in this controversy, seem to have been drawn by counsel among the most learned and distinguished in the State, and the work which they were respectively employed as legal counsel to do, appears to have been plain and simple in its nature; and'it seems to be wonderful, that so much doubt and difficulty should have resulted from what was done by the said testator and testatrix in the matter, that the same was thereby rendered void and of no effect —in *the judgment of the learned court below. That judgment was, at first, in favor of the validity of the provisions in question of the said two wills, and was sustained by a written opinion of the learned judge. But he afterwards changed his opinion, and rendered .judgment against the validity of the said provisions. No man has a higher respect than I have for that individual; both as a lawyer and as a gentleman; and I am glad that my views of the subject'under ponsideration, are sustained by those which he first entertained on the subject; though I regret very much that he aft-erwards changed his opinion. He may be right and I may be wrong; but as I am of a different opinion, I must be governed by mine and will now state it.
The will and codicils of the testator seem to have been written by William Green. We all know who he is. He was a subscribing witness to each of them. The will of the testatrix seems to have been written by P. H. Aylett, who was a subscribing witness to the same. We all know who he was; and why there should be any doubt or difficulty as to the meaning and effect of an instrument prepared by them, or either of them, on a subject which seems to be plain in its nature, is a question which I confess I cannot solve; at least to my own satisfaction.
The testator, Richard G. Morriss, was a man of great wealth. He resided in the city of Richmond, where a great deal, if not most or all of his property was situated. He died leaving a wife and four children, besides a great many grandchildren. He left a will, by which he gave to his wife an annuity for life of two thousand dollars, payable in half-yearly instalments of one thousand dollars each, in gold or its equivalent. Besides which, he made other and large provisions for her. He had made large advancements to his four children, amounting to upwards of thirty thousand dollars each, *and by his will made large bequests to them, or some of them. Having thus made the most ample provision for his wife and all his children, he chose to set apart one acre of ground in the city of Richmond with the improvements thereon, and place the same at the disposal, and subject to the power of appointment, of his wife; liipiting the same however to their descendants according to her pleasure, “save and except that not more than one-half of the ground” aforesaid should be given by her to any one of his descendants. Now, if the testator, having thus amply provided for his wife and children, had chosen to have given to strangers, an acre of ground, the gift would not only have been legal and valid, but might have been very reasonable, and certainly would not have been an. act of which his family could justly complain. A fortiori, they cannot complain of his giving to his wife and the mother of his children, a mere power of appointment, not among strangers, but among his and his wife’s descendants, their own blood. He was about to leave this world, and to leave his wife behind him, with a family of children amply provided for, and a large number of grandchildren, who though perhaps not then in need, some of them at least rrfight soon thereafter become so. Under these circumstances, he chose to leave in the hands of his surviving wife an acre of ground in the city of Richmond, subject to a life estate in her, with remainder among his and her descendants as she might appoint, not giving to one of them more than one-half of the ground. 'What could be more reasonable than such a testamentary provision under the circumstances? And is it not a case in which the court should lend its aid to the testator, to carry out his reasonable and natural purpose, rather than exercise its judicial power to thwart such a purpose?
*Under the will, there could have been no doubt nor difficulty as to its meaning — “all which property,” &c., after fully and plainly describing it, “I moreover put under the power and control of my said wife, to give, absolutely, or in such other manner as she shall think fit, from time to time while she lives, by deed or other instrument or mode appropriate in law for giving the particular kind of property she shall so give, or after her decease by her last will and testament, to such one or more of my descendants, and in such parcels or portions as she shall think proper; save and except that not *381 more than one-half of the ground in the lots aforesaid shall be given by her to any one of my descendants.”
The first codicil to the will, dated less than a month after the will, has no relation to the property in question. The second codicil thereto, dated the láth day of May, 1867, exactly five months after the date of the will, has some relation to the said property, and contains the words which have produced the difficulty in this case, but which I humbly think ought not to have produced it. The codicils seem to have been written by the same hand which wrote the will — the hand of the same able lawyer. In the second codicil, the testator, in the first clause, surmises that his wife may prefer to remove from the city of Richmond, and to sell the property in controversy and invest the proceeds of sale elsewhere; and he then goes on to dispose of the proceeds of sale, or the property which might be therewith purchased in that event, using the following language:
“The whole of which, both real and personal estate, so newly acquired, shall be held to the same uses, intents, and purposes and subject to the like interests and power in my wife as is,bymysaidlastwill,givenherinre-gard to the real and personal estate hereby ^permitted to be sold during her life, but subject it to the following qualification, that is to say — that whatever she shall, by will, deed or otherwise, give beneficially to any of my descendants, the same shall not be given absolutely to such descendant or descendants so as to be under his or her control, but given in trust for him or her, and in case of a female, to her sole and separate use.”
Now it is doubtful, to say the least, whether this codicil has any effect upon the will. The codicil seems to have been based upon the hypothesis that the lots mentioned in the will might be sold and the proceeds of sale investedinthepurchase of property situated elsewhere; and the testator then goes on to provide for the sale of the property which might be so purchased. A sale of the property as it stood when the will was made, was therein amply provided for; and there may have been no occasion for making any change in the provision of the will on that subject, supposing things to continue to remain at the time of the sale as they were at the date of the will. In that view the will would stand at the time of the sale as it was at the time it was written, and the second codicil would be, in effect, as if it had never been written; that is a mere nullity in regard to the ground in question.
But it is unnecessary to take that view; and reading the second codicil as the substitute of the will in regard to the provision for the sale of the ground, can there be any doubt about the meaning of the testator, or the validity of the act of the testatrix in ’the execution of the power of sale given her by the second codicil? I think not.'In neither view have I any difficulty in ascertaining what the testator intended, or in regard to carrying the same into legal effect. *There are but three lines in the second codicil which can give rise to the slightest question as to the testator’s meaning; and that is certainly not enough to frustrate the plain language of the will and the palpable purpose of the testator as therein expressed. Nothing can be plainer than the will, in my view of it, either as to expression or intention. So much plainness in the will ought not to be frustrated by so much doubt in the codicil, if it does not plainly mean what the will means.
Now it must be remembered that these descendants of the testator were not only numerous but were of extreme youth. One of them was so young as to be called “baby;” perhaps not being old enough to have acquired another name, even before the death of the testatrix, and not having been born before the testator’s death. Of course it was not intended that these infants should receive, or have power to dispose of the property absolutely during their infancy, or have control of it during that period; but it was intended, that during that period at least, it should be “given in trust for him or her, and in case of a female, to her sole and separate use.” Can it be supposed that these vague and doubtful expressions were intended to change the whole meaning of the will in regard to the trust subject thereby created; to make void, in effect, the trust created by the will. Can it be supposed that it was thereby intended to prevent any of the testator’s descendants after arriving at lawful age, however discreet and prudent they might be, from having the charge and disposition of their own property, and subjecting it to the control and management of others, and perhaps strangers ? Has not the testatrix amply complied with all the conditions which could have been contemplated by the testator, in the careful provision made in her will to secure to the descendants of *herself and her husband, by the agency of her executor and of other trustees, the use and benefit of the trust subject designed and provided for them by the testator? It clearly seems to me so; and I am therefore decidedly in favor of giving effect to the wills of the testator and testatrix, according to their true intent and meaning as aforesaid. '
The whole difficulty in this case arises from expressions used by the testator in the last two or three lines of his second codicil, in the provision thereof relating to the subject under consideration. That provision is in these words: “The whole of which, both real and personal estate, so newly acquired, shall be held to the same uses, intents and purposes and subject to the like interests and power in my wife as is by my said last will and testament given her in regard to the real and personal estate hereby permitted to be sold during her life, but subject to the following qualification, that is to say, that whatever she shall, by will, deed or otherwise, give beneficially to any of my descendants, the same shall be not given absolutely to such descendant or descendants, so as to be under his or her control, but given in trust for him or her, and in case of a female, to her sole and separate use."
*382 The few last lines of the above which are italicized, alonfe create the difficulty in this ■case.
Now can it be said that those few lines indicate an intention on the part of the testator, to make so material a change of his will as is contended for by the counsel of the appellant? Or that the will of the testatrix on the subject is unauthorized by the testator, and therefore invalid and ineffectual? I think not.
The said few lines could only have been intended to give to the testatrix the power to give the property in question to a trustee for the use of their decendants during their minority respectively; not absolutely, but *on such trusts as she might prescribe for their benefit. She therefore expressed a desire in her will, that as the real estate in question was not susceptible of judicious division among their grandchildren, it should be kept together for six years from the date of her death, unless her executor should deem an earlier sale judicious; and it should during that time, or until it should be sold, be under her executor’s full control and management, and he should dispose of the rents and profits of the same as before directed by her will. In the event of the death of any of the grandchildren to whom the 'appointment was made by her, before they respectively attained the age of twenty-one years, the shares of such as might so die, were not then to go to their real or personal representatives, but were limited over to other descendants of the testator and testatrix. If there had been no such limitation over, such shares would have gone to such real or personal representatives. Here then is a case, in which effect is given to the provision aforesaid, in the second codicil of the testator. Can it be said that the testatrix had no power under the will of the testator, to give any of the said property to any of the said descendants absolutely, after attaining the age of twenty-one years; but could only give it, subject to such trusts as would prevent such descendants from disposing of it after that period? What would be the nature and extent of such trusts? On that subject, the will and codicils.of the testator are totally silent. Can it be said that he only intended she should give the share of each descendant to whom the appointment might be made, to a trustee for the use of such descendant, without any necessity for defining and specifying the nature of such use? If such was his intention, it has been virtually carried into effect, as her executor was a trustee for that purpose. But suppose she had expressly given such share to a *trustee for the use of such descendant, without defining or specifying the nature, or extent of such use; would not such a gift have had precisely the same effect as a gift directly and expressly to such descendant, without any such definition or specification as to the use of such share? There cannot be a doubt on t-hat subject. The only specification of a use in the will is, that the gift in trust must be, “in case of a female, to her sole and separate use.” Now suppose the testatrix had given any portion of the subject to a trustee expressly for the sole and separate use of one of the female descendants, would not such descendant have had unlimited power to dispose of such portion as her own property, subject only to such limitation as might be imposed on such power in the said gift? That the testatrix in her will, did not expressly declare that the share given to any female descendant as aforesaid was given “to her sole and separate use,” can make no difference; because such descendant would take under the wills both of the testator and testatrix, and under those wills, construed together, she could take such share, only “to her sole and separate use.”
Now can there be any thing in the power of appointment given by the will of the testator, or in the execution of that power by the will of the testatrix, which can defeat the intention plainly expressed by the testator, in regard to an acre of his land, which he certainly intended to give to some of his descendants, after having most amply provided for his wife and all his children?
I am therefore for reversing the decree of the court below with costs, and in lieu thereof rendering a decree in conformity with the foregoing opinion.
STAPLES,J. The sole question in this case is whether Mrs. Morriss has properly exercised the power conferred upon her by the will and codicil of 'her husband Riéhard Horriss. It is not denied that Mrs. Morriss had under the will an unlimited power of appointment with respect to the Franklin street property. The language of the testator is: “all which property I moreover put under the power and control of my said wife to give absolutely or in such manner as she shall think fit from time to time while she lives or after her death by last will and testament.” The only limitation imposed by the testator is that not more than half the land shall be given to anv one of his descendants.
The codicil which gives rise to the present controversy was not executed until nearly six months after the date of the will. It is apparent that during that time Mr. Morriss’ views with respect to the disposition of his property had undergone a considerable change. His idea obviously was, that as it was impossible to foresee what would be the habits, tastes, and dispositions of his descendants it would be best to put some restraint upon their dominion and control of the property he proposed to give them through the agency of his wife. Accordingly in his codicil, while directing that the property should be held to the same uses, interests, and purposes and powers in his wife given her by his will — he confers the power subject to the following qualification, that is to say: “that whatever she shall by will, deed or otherwise give beneficially to any of his descendants the same shall not be given absolutely to such descendant or descendants so as to be under his or her control, but given in trust for him or her. and in case of a female to her sole and separate use.” Comparing this language with that of the *383 will already cited, it is certain the testator did not mean the same thing in both instruments. It is certain that by the *will he intended to confer upon his wife the power of bestowing absolute estate in fee. It is equally certain that by the codicil he intended to limit that power. His intention was that neither of his descendants should have such absolute estate in fee as would give him the unlimited control. And although the draftsman has used but a few words in expressing that intention, it is as effectually done as if he had used a hundred.
In the argument here and in the opinion of the president, much stress is laid upon the fact that the will of Mr. Morriss and codicil, as also the will of Mrs. Morriss were written by two eminent' lawyers; and the conclusion is in some way sought to be deduced — the settlements made by Mrs. Morriss must therefore be held to be valid. I cannot appreciate the justice or force of such an argument. When a writing is brought here to be construed, this court must judge of it as it stands by its own provisions; and not with reference to the attainments of the counsel who prepared it. This is especially true with respect to wills which are often hastily prepared when the testator is in extremis. Usually the counsel writes as he is instructed without undertaking to question or criticise the propriety or validity of the testator’s views with respect to the disposition of his property. In the present case it so happens that they who concur in the view now taken think all the provisions contained in the will of Mr. Moj-riss are valid and ought to be sustained in every particular. In our opinion the whole difficulty grows out of the fact that Mrs. Morriss’ will is not a proper execution of the powers conferred upon her by her husband. With respect to that will it is observable no reference whatever is made in it to the codicil of Mr. Morriss. A careful examination of its contents would lead to the conclusion that the draftsman of the will had not seen or read the codicil. Be that as it may, *the attorney no doubt in preparing the will of Mrs. Morriss wrote it as he was instructed, without undertaking to decide whether Mrs. Morriss was carrying properly out the intentions of her husband. I have said this much upon this point simply to exclude a conclusion.
We come then to the question, is the power conferred by the will and codicil of Mr. Mor-riss capable of proper execution. Is there anything in that power or in the limitations upon it inconsistent with any rule of law or public policy. The answer to this question may be found in numerous adjudged cases. I shall cite but a few of them. In the case of Leavitt v. Reirne, 21 Conn. R. 1, Waite, J. in delivering the opinion of the court said — • “We think it in the power of a parent to place property in the hands of trustees for the benefit of a son and his wife and children, with full power in them to manage and apply it at their discretion, without any power in the son to interfere in that management or in the disposition until it has actually been paid over to him by the trustees; and the learned judge then proceeds to argue in favor of the existence of this power, from the views, habits or intemperate character of the-son, and the right of the father to provide against these misfortunes. In the late case of Nichols’ assignee v. Eaton, 1 Otto. U. S. R. 716, 727, Mr. Justice Miller discussed this whole question with his usual ability and clearness. In the course of his opinion, he said — -“Why a parent, or one who loves another and wishes to use his own property in securing the object of his affection as lat-as property can do it, from the ills of life, the vicissitudes of fortune, and even his own imprudence or incapacity for self protection, should not be permitted to do so, is not readily perceived.”
*But we have an authority upon this-point much nearer home. In Nickell & Miller v. Handly, 10 Gratt. 336, this court said, “there is nothing in the nature or law-of property which prevents the testatrix, when about to die, from appropriating her property to the support of her poor and helpless relations, according to the different conditions and wants of such relations; nothing to prevent her charging her property with the expense of food, raiment and shelter for such relations. There is nothing in law or reason which would prevent her from appointing an agent or trustee to administer her bounty.”
I do not cite these authorities for the purpose of showing, nor do I mean to assert, that the owner ’of property may grant it to another in fee and at the same time impose such restrictions upon the donee as will deprive the latter of the jus disponendi, or prevent'the property from being taken for his debts. Upon that question there is nothing in the present case calling for an expression of opinion. All I mean to say is, that the owner may undoubtedly grant his property to his offspring or other person without exposing his bounty either to the debts or the imprudence of the beneficiary. That this may be done by creating trust estates, is shown by the authorities already cited. See also Perry on Trust 385, 387. And this is precisely what Mr. Morriss desired, and what he declared should be done. The details of the trust, the mode, the manner of the execution were left to the sound discretion of his wife in whose judgment and affection he had the fullest confidence. Whatever she should give beneficially, should be given not absolutely, but in trust, so as not to be under the control of the beneficiarv. And where the descendant was a female the property is required to be settled to her sole and separate use, *manifestly so as not to be under the control of or subject to the debts of any future husband.
How have the wishes of the testator been carried out by the will of Mrs. Morriss. To my mind it is too clear for argument that she has given to each one of her descendants an absolute estate in fee. She directs a sale of the property and the proceeds to be invested for the benefit of the children during their infancy — and then to be paid over- *384 to them as they severally attain the age of twenty-one years. If this is not an absolute estate in fee, without the semblance of a trust, it would be difficult to define or create such an estate. The limitations over in the event of the death of the legatee before arriving at age were simply designed to indicate the line of succession, and not to restrict the absolute ownership and control when the legatee should come into the possession. So far as the female descendants are concerned there is no pretense of an estate to their separate use. Not the slightest attention was paid to the will of Mr. Morriss in this particular.
But let it be conceded, for the sake of argument, that the conditions attached to the execution of the power are void and incapable of execution; may the donee of the power disregard them and convey the property absolutely? I do not so understand the rule. Mr. Morriss has declared that in default of the appointment in the mode and manner required by him, the property should descend and be divided among his own children and the descendants of those that are dead. According to a well settled principle of law until the power is executed the estate is vested in the devisee or remainder man, and can only be divested by a proper execution of the power. And if the. power can never be executed in the way prescribed by the testator it is *a nullity, and the estate remains in the devisee or heir. Cooper v. Martin, 3 Chy., appeal 57.
. Whether therefore we regard the conditions attached to the power as valid or invalid, the result is precisely the same. In either case the estate descends to and is vested in the testator’s own children,. and cannot be divested by reason of the failure to comply with those conditions.
Before passing from this branch of the case I must not fail to notice a provision in the codicil which though not .averted to in the argument has not escaped the attention of the court. It will be observed that Mr. Morriss authorizes his wife to make sale of the property real and personal which is the subject of this controversy; and further to invest the proceeds in other property to be held to the same uses and purposes as that which was sold. The question has arisen whether this newly acquired property alone is not included or intended to be in the limitations and restrictions mentioned in the codicil. There would be some force in the idea if Mr. Morriss had directed his real estate to be converted into money, and stopped there. But he does not do so. The proceeds of the realty are to be invested in other real estate, and the proceeds of the personalty in other personalty of like kind. So that no possible reason could arise for applying a limitation to the original estate-that would not equally apply to the newly acquired estate. The testator plainly intended that the newly acquired estate should be subject to the same trusts and powers in his wife as the original estate. Whatever was given beneficially should be given not absolutely but in trust. Mrs. Morriss did in fact by her will direct a sale of the real estate, and the proceeds came literally within the designation of newly acquired estate. The learned counsel for the appellant-manifestly did not attach any ♦importance to the question as he did not even allude to it, and the court has only done so upon a suggestion that it may have escaped our attention.
Both in the petition for an appeal and in the argument before this court, it was insisted that the effect of Mrs. Morriss’ will is to create a trust, that the property is devised to the sole and exclusive use of the grandchildren, and this established a trust such as was contemplated by Mrs. Morriss. A devise to the sole and exclusive use of a female or married woman may create a separate, estate in the donee. It is certainly a novel idea that such a devise to a man in any way operates either as a trust or a limitation upon the estate devised. It is easy, however, to understand what Mrs. Morriss meant by the use of the words in question. She had directed that the property should be equally divided not in quality but in quantity, one-half to front on Franklin street and the other to front on Main street. She then directs that the half fronting on Franklin street shall be sold “for the sole and exclusive use” of three of her grandsons and a granddaughter named; that is to say to the exclusion of the other grandchildren. And so with respect to the half fronting on Main street — it was also to be sold for the exclusive benefit and use of sixteen of her grandchildren named by her — that is to say to the exclusion of the grandchildren taking the Franklin street property. The words were unnecessary, but they were obviously used out of abundant caution to exclude those receiving one-half the proceeds from any participation in the proceeds of the other half. No one reading this part of the will can fail to perceive that no trust is created .and that none was intended thereby.
. Again it has been insisted that Mr. Mor-riss’ object was merely a provision for his grandchildren during their minority, and this object has been effected by the *will of Mrs. Morriss. Now if we suppose. Mr. Morriss not destitute of the most ordinary information on a very familiar subject, he knew that his grandchildren could not dispose of or exercise any control over the estate given them during their infancy, and therefore any restraint upon their jus disponendi during that period was wholly unnecessary.
We are gravely asked to believe that when Mr. Morriss declared that the estate should not be given to either of his grandchildren absolutely so to be under his or her control, he. meant that the legatee should not have the control during the period of his or her minority. In other words so long as the restraint was unnecessary it should be held to exist, but so soon as the time arrived when it might be of some advantage it must be held to have terminated. Mr. Morriss has not so declared — he has used no words from which it can even be inferred that the limitations and *385 trusts contemplated by him should continue merely during the minority of his grandchildren. The direction in respect to his granddaughters, that the property shall be given to their sole and separate use is of itself conclusive that such could not have been his intention. He was apprehensive that his grandchildren or some of them might waste the estate given them if left in their absolute control and possession; he therefore sought to place some restrictions upon that control by declaring it should be held in trust for their benefit. Such a provision was of course only necessary when the legatee arrived at the age for taking possession of the estate.
The main ground upon which the appellants rely, however, is that this is a case of defective execution of powers which may be properly aided by a court of equity. The argument in support of this view is that the intent of the testator ought to prevail in all cases *if not inconsistent with the rules of law. And as Mr. Morriss’ intention was to confer upon his wife the power to bestow the property upon his grandchildren if such was her wish, the court ought to give effect to that intention by remedying any defect in the execution of the power. In answer to this it may be said Mr. Morriss certainly did not intend that his wife should give an absolute estate to either of his grandchildren — he has expressly declared she should not do so. He has therefore attached to the exercise of the power a condition; and this condition is an element of his testamentary intention, to be considered by the courts as fully as the intention to confer the power itself. So far as Mrs. Morriss is concerned, there is nothing to show that she ever desired or intended to execute the power in the manner and with the conditions prescribed by Mr. Morriss. In her will she refers to the absolute testamentary control of the property given her by her husband in his will; and throughout she utterly ignores the restrictions prescribed in the codicil. Now let me ask is there any case in which the courts undertake to aid the defective execution of a power unless it plainly appears that the donee of the power intended to execute it in the manner designed by the testator. That is a well-established rule. As was said in Garth v. Townsend, 7 Law R. Eq., 320, the true test is — is there a distinct intention to execute the power? The jurisdiction of the court is to supply defects occasioned by mistakes or inadvertence, not to supply omissions intentionally made. 1 Lead. Cases in Equity 375.
The jurisdiction of equity to remedy defects in the execution of powers occasioned by mistake or accident is well settled. And therefore it is if a power is required to be executed in the presence of two only, or if it is required to be signed and sealed and it is without seal equity will interfere, upon the ground of *accident and mistake. 1 Story Eq. sec. 174. And so where it is manifest the donee intended to execute the power, but the instrument selected is inappropriate for the purpose, equity will supply the defect. 4 Kent 380. Sometimes the execution of the power may be good in part and bad in part, and the excess only will be void. This rule, however, only applies where the execution of the power is complete; 2 Sug. 75; and a distinct and unauthorized limitation is added. But the boundaries between the good part and the excess must be clearly distinguishable to warrant the interference of the court. 4 Kent 382, marg. 346. Where, however, there is a defect of substance in the execution of the power equity cannot supply the defect. Story Eq. sec. 175. And as a general rule, the estate or interest given must conform to the power; although it has been said where the nature of the interest is the same equity will uphold it.
The present case cannot be brought under either of these heads, ft is a defect in the substance of the power. It is an attempt to give not only a different estate but a different ^ interest from that contemplated by the testa- ! tor. He intended the estate should not be 1 given absolutely but in trust, so as not to be ' under the control of the devisees or legatees: j Mrs. Morriss intended the very reverse. She intended to give and has given absolute estates in fee: Mr. Morriss intended that the nature and character of the trusts should be declared by Mrs. Morriss. This he confided to her discretion, and to her only. It was a condition attached to the execution of the power. It is only necessary to consider for a moment how numerous and diversified are , the trusts recognized by law upon which i property may be settled to see at once the ! utter inability of a court of equity to declare I the trusts in this case and to execute a i power confided alone to Mrs. Morriss.
*But we are met with another difficulty in any attempt to supply the defects in the execution of the powers here. It is well settled that the party invoking this extraordinary jurisdiction must have some legal right, or a superior equity to that of the person against whom the relief is sought. The same principle governs in this class of cases as in applications for specific performance. Where the equities are equal the courts choose rather to leave the parties to their legal remedies if any they have. Story Eq. Jur. 170 — a. And therefore it is. while equity will supply a defective execution in behalf of creditors. purchasers for a valuable consideration, charities, a wife and legitimate children, it will not do it in behalf of a grandchild against the testator’s own children. I do not mean to say that this is universally so. It is certainly the general _ rule, and although denied in some cases, it is established by a great weight of authority. Adams’ Eq. 235; 2 Sugden on Powers 180; 1 Lead. Cases in Equity 176-7; Bisp. Principles of Eq. 179; 4 Kent 380.
The reason is obvious — the grandchildren do not stand upon any consideration of marriage, blood, or affection superior to those of the testator’s own children.
Let us see if there is anything in the present case to warrant a departure from the rule as established. It is impossible to look through Mrs. Morriss’ will without at once seeing that the grossest inequality and incongruity per *386 vades her scheme of appointments under the-powers confided to her. She has given to four of her grandchildren the property fronting on Franklin street of the value of $31.000. Whilst the property fronting on Main street worth not more than $9,000, is divided among sixteen of her grandchildren. No reason has been suggested for a distribution so unequal and partial, and none is to be gathered from the face of her will. There are other unjust and *unequal appointments in the will of Mrs. Morriss as may be seen by an examination of the paper; but it is unnecessary to do more than allude to them here. It is very true that under the will of Mr. Morriss his wife is vested with the power of making unequal appointments; and if she had executed the power properly in other respects no objection could be made on the score of such inequality; but when a court of equity is called upon to aid a defective execution-of powers as against the testator’s own children in behalf of a part of the grandchildren, the court ought to take into consideration all the circumstances in order to determine whether the case is one calling for its interposition. If in the present case the grandchildren fail to get the estate it passes in equal shares or proportions to their parents who represent them, so that no injustice is done. Upon the whole case I am for affirming the decree of the chancery court.
CHRISTIAN and BURKS, Js„ concurred in the opinion of Staples, J.
ANDERSON, J., concurred in the opinion of Moncure, P.
Decree affirmed.